## BRAXTON v LITCHALK

1. JUDGMENT—COLLATERAL ESTOPPEL—RES JUDICATA—COMMON PLEAS COURT.

    The common pleas court may enter a judgment to which the doctrines of collateral estoppel and res judicata apply in a second action.

2. JUDGMENT—COLLATERAL ESTOPPEL—RES JUDICATA—DEFAULT JUDGMENT—QUESTIONS LITIGATED.

    The doctrine of res judicata applies to a default judgment and a default judgment has the effect of collateral estoppel in a subsequent action between the parties arising out of the same transaction or occurrence; the important factor is not whether the prior case has been formally tried as distinguished from judgment taken by default, but whether the question of fact was actually litigated and determined in the prior action.

3. JUDGMENT—COLLATERAL ESTOPPEL—PARTIES—SUBSEQUENT ACTIONS—DIFFERENT CAUSES OF ACTION—ISSUES LITIGATED.

    Collateral estoppel bars the relitigation of issues previously decided in a first action when the parties to a second action are the same; where the second action is a different cause of action, the bar is conclusive only as to issues actually litigated in the first action.

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur 2d, Judgments § 539.

[2] 47 Am Jur 2d, Judgments § 1198.

Doctrine of res judicata as applied to default judgments. 77 ALR2d 1410.

[3, 4, 11] 46 Am Jur 2d, Judgments §§ 524–528.

[5] 46 Am Jur 2d, Judgments §§ 524–528, 531, 577.

[6] 8 Am Jur 2d, Automobiles and Highway Traffic § 603.

Validity, construction, and effect of statutes which make owner responsible or create a lien for injury or death inflicted by another operating an automobile. 135 ALR 481.

[7] 46 Am Jur 2d, Judgments § 498.

[8] 46 Am Jur 2d, Judgments § 628.

[9, 10] 46 Am Jur 2d, Judgments §§ 521–523.

4. JUDGMENT—COLLATERAL ESTOPPEL—PARTIES—SUBSEQUENT ACTIONS —DIFFERENT CAUSES OF ACTION.

A subsequent action involved the doctrine of collateral estoppel and whether it could be properly invoked by each of three named defendants as a bar to plaintiffs' claims where in the subsequent action plaintiffs alleged defendants' were negligent and that their negligence was a proximate cause of plaintiffs' loss, and claimed compensation for property damage and personal injury, and these claims were not pled in the previous action, wherein it was claimed that one of the present plaintiffs was negligent and that this negligence caused the collision between two vehicles.

5. JUDGMENT—COLLATERAL ESTOPPEL—PARTIES—IDENTITY.

Collateral estoppel applies only if the litigants were parties or privy to a party to the previous action; substantial identity of the parties, rather than precise identity, is sufficient for application of the doctrine.

6. AUTOMOBILES—MOTOR VEHICLES—OWNERS—LESSEES—STATUTES.

A defendant lessee's interest in a leased motor vehicle is substantially identical, if not precisely identical, with that of another defendant holder of legal title of the leased motor vehicle where the statute defines the word "owner" as a person, including a corporation, which has exclusive use of a vehicle, "under a lease or otherwise", for more than 30 days (MCLA 257.37[a]).

7. JUDGMENT—COLLATERAL ESTOPPEL—MOTOR VEHICLES—OWNERS— LESSEES.

A defendant record title owner of a motor vehicle may assert collateral estoppel "defensively" in a subsequent action where its lessee of the motor vehicle has established its right to recover in a previous action.

8. JUDGMENT—COLLATERAL ESTOPPEL—PARTIES—PRIVITY.

A defendant in a subsequent action is not in privity with the parties to a previous action where he was not a party to the previous action and he has not acquired an interest in the subject matter of that action through inheritance, succession, or purchase.

9. JUDGMENT—COLLATERAL ESTOPPEL—MUTUALITY OF ESTOPPEL—SUBSEQUENT ACTIONS.

Collateral estoppel generally applies only when there is a mutuality of estoppel; a party cannot rely upon a previous judgment

unless the other party could have pled it against him had the judgment gone the other way.

10. JUDGMENT—COLLATERAL ESTOPPEL—MUTUALITY OF ESTOPPEL—
SUBSEQUENT ACTIONS—PRINCIPAL AND AGENT—MASTER AND
SERVANT—INDEMNITOR AND INDEMNITEE.

A well-recognized exception to the requirement of mutuality of estoppel in a subsequent action exists in cases involving a relationship such as a principal and agent, master and servant, or indemnitor and indemnitee.

11. JUDGMENT—COLLATERAL ESTOPPEL—SUBSEQUENT ACTIONS—ISSUES
LITIGATED.

A servant-agent-employee driver, defendant in a second action, who was not a party to a first action in which the principal-employer prevailed on the ground that the defendant in the first action, plaintiff in the second action, was negligent and that his negligence was a proximate cause of the accident, may apply the doctrine of collateral estoppel defensively because the plaintiff in the second action against whom collateral estoppel is asserted had an opportunity to litigate the issue in the first action.

Appeal from Wayne, Thomas J. Roumell, J. Submitted Division 1 June 11, 1974, at Detroit. (Docket No. 17181.) Decided October 7, 1974. Leave to appeal applied for.

Complaint by Robert L. Braxton, Sr., Thelma Braxton, Robert L. Braxton, Jr., and Delores Braxton against John W. Litchalk, Bendix Corporation, and D. L. Peterson Trust, for damages for injuries received as a result of an automobile accident. Accelerated judgment for Litchalk and Bendix Corporation as to plaintiffs Robert L. Braxton, Sr., and Thelma Braxton, and motion for accelerated judgment denied as to plaintiffs Robert L. Braxton, Jr., and Delores Braxton. Motion for accelerated judgment by defendant D. L. Peterson Trust denied as to all plaintiffs. Plaintiffs Robert L. Braxton, Sr., and Thelma Braxton appeal. Defendant Trust cross-appeals. Affirmed as to defendants Bendix and Litchalk, and reversed as to the motion of

D. L. Peterson Trust against Robert L. Braxton, Sr., and Thelma Braxton.

*Sanford N. Lakin, P. C.* (by *Richard B. Worsham*), for plaintiffs.

*Garan, Lucow, Miller, Lehman, Seward & Cooper, P. C.* (by *Millard Becker, Jr.*), for defendants.

Before: J. H. GILLIS, P. J., and ALLEN and EL-LIOTT,* JJ.

ALLEN, J. Plaintiffs-appellants have appealed from the April 20, 1973 order of the trial court granting defendants-appellees' motion for accelerated judgment. GCR 1963, 116.1(5). D. L. Peterson Trust, defendant-cross-appellant, has filed a cross-appeal from the trial court's denial of its motion for accelerated judgment.

This case comes before us on an agreed statement of facts. GCR 1963, 812.10. On September 12, 1969, Robert Lee Braxton, Sr., was the operator and owner of a motor vehicle which was involved in an automobile accident with a vehicle owned by the D. L. Peterson Trust, leased to Bendix Corporation and driven by John William Litchalk, a Bendix employee. Robert L. Braxton, Jr., was a passenger in his father's vehicle at this time and place.

In February of 1971, Bendix Corporation filed a lawsuit, case number 4-088-657, in the Common Pleas Court for the City of Detroit against Robert L. Braxton, alleging that he was negligent in the operation of his vehicle and sought $205.76, the amount it cost to repair the damage to the Bendix vehicle. Braxton failed to answer this complaint,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and on April 8, 1971, an affidavit was filed in support of the default. On that same day, a judgment of default was entered in the common pleas court, and on April 21, 1972, satisfaction of judgment was entered in the common pleas court after Robert Lee Braxton, Sr., had paid such judgment.[1]

On July 18, 1972, Robert L. Braxton, Sr., his wife Thelma, Robert Braxton, Jr., and his wife Delores filed suit in the Wayne County Circuit Court against John William Litchalk, and D. L. Peterson Trust, of Bendix Research Lab. At a subsequent hearing in this case, it was agreed that the latter-named party did not exist, and that the proper defendants should be known as the D. L. Peterson Trust and Bendix Corporation.

Robert L. Braxton, Sr., the named defendant in the common pleas action, is one of the named plaintiffs in the instant suit. His wife Thelma has maintained a derivative claim for loss of consortium, services and companionship. Delores Braxton, wife of Robert Braxton, Jr., maintains a similar claim.

On August 17, 1972, defendants filed a motion for accelerated judgment. Hearing was had on that motion on September 29, 1972, and on January 4, 1973, the trial court rendered its opinion. The trial court held that Mr. Litchalk, driver of the Bendix vehicle, could rely upon the doctrine of collateral estoppel, that Robert Braxton, Sr., and his wife were barred from maintaining an action against the driver of the vehicle, and were barred from maintaining an action against the Bendix Corpora-

---

[1] This Court has examined the file of case number 4-088-657 of the common pleas court and finds that Robert Lee Braxton, Sr., did appear by his attorney after default was taken and, as hereinafter recited in this opinion, moved to have the default judgment set aside. Following consideration by the court, the default was first set aside and later reinstated.

tion. The court held that Robert L. Braxton, Sr., and his wife were not barred from maintaining an action against the trust company. Also, it was ordered that Robert L. Braxton, Jr., and his wife could maintain an action against the three named defendants, and these defendants have agreed that Robert L. Braxton, Jr., and his wife are not barred by the previous common pleas court judgment entered against Robert L. Braxton, Sr.

On appeal, plaintiffs argue that the common pleas default judgment rendered against plaintiffs is not res judicata to the instant suit, nor does it collaterally estop plaintiffs from maintaining this suit, because: (1) the common pleas court allegedly lacks the stature of a circuit court, (2) a default judgment is not a decision on the merits, (3) Bendix Corporation's property damage claim was a cause of action different than plaintiffs' instant claim for personal injuries and property damages (4) and the instant suit involves different litigants, and consequently there is a lack of privity and/or mutuality among the various litigants. Cross-appellant D. L. Peterson Trust, legal titleholder to the Bendix vehicle involved in the accident, contends that it would be precluded from relitigating the claim which Bendix Corporation had filed in the common pleas court, and that according to the doctrine of mutuality, the plaintiffs are collaterally estopped from maintaining this suit against it.

The common pleas court may enter a judgment to which the doctrines of collateral estoppel and res judicata apply, and plaintiffs' argument to the contrary is without merit. *Chunko v LeMaitre,* 10 Mich App 490, 495; 159 NW2d 876 (1968). As stated in 50 CJS, Judgments, § 689, p 146:

"A sentence, judgment, or decree of a court acting within its jurisdiction is res judicata, preventing the

fact or matter adjudicated from being relitigated in the same or any other court between the parties and privies, whether the court rendering it had general, inferior, special, limited, concurrent, or exclusive jurisdiction * * * . [T]he relative rank of the courts involved is immaterial; if the judgment is one which in its nature operates as res judicata it is binding on all other courts, even the highest, although rendered by the lowest court in the judicial system." (Footnotes omitted.)

MCLA 728.1, MSA 27.3651 states that the common pleas court is a court of record, that it has concurrent jurisdiction with the circuit court in all civil actions where damages do not exceed $10,000, and has exclusive jurisdiction where the damages do not exceed $5,000. Without specifically addressing the instant question, our Court has applied the defense of collateral estoppel to a circuit court case filed subsequent to a common pleas proceeding, *Jones v Slaughter,* 54 Mich App 120; 220 NW2d 63 (1974), and it is clear that plaintiffs' first argument is without merit.

Contrary to plaintiffs' second argument, the doctrine of res judicata applies to a default judgment. *Perry & Derrick Co, Inc v King,* 24 Mich App 616, 620; 180 NW2d 483 (1970), said:

"A default judgment is just as conclusive an adjudication and as binding upon the parties of whatever is essential to support the judgment as one which has been rendered following answer and contest."

See also 47 Am Jur 2d, Judgments, § 1197, p 213. A default judgment will also "be given collateral estoppel effect in a subsequent suit between the parties arising out of the same transaction or occurrence". *Sahn v Brisson,* 43 Mich App 666, 670–671; 204 NW2d 692 (1972).

There is authority that where the issues are not

actually litigated in the prior action but are determined by default judgment only, the prior action is not conclusive as to those issues in the subsequent cause of action. *Petrucci v Landon,* 48 Del 491; 107 A2d 236, 239 (1954). *Petrucci, supra,* based its conclusion upon the rules in Restatement, Judgments, § 68 (1942). The case of *Lovejoy v Ashworth,* 94 NH 8; 45 A2d 218, 219 (1946), also referred to Restatement, *supra,* as authority for holding a prior default judgment did "not bar the defendant from raising [the] issue in a later suit upon a different cause of action". See also *Developments in the Law—Res Judicata,* 65 Harv L Rev 818, 840–841 (1952).

These cases appear to represent the minority view. 77 ALR2d 1410, § 3(a), p 1419 states:

"[The] general rule is that a default judgment is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as one entered after answer and contest."

The above annotation recognizes the rule set forth in § 68 of the Restatement, supra, but then proceeds to note that it is "supported by but a few of the cases discussed in [the] annotation", one of which is *Lovejoy, supra.* The annotation then proceeds to comment "there are a great number of cases" in which the courts have applied collateral estoppel to a default judgment. See also 47 Am Jur 2d, Judgments, § 1198, p 214. Among the cases supporting the majority rule are *Laughlin v Lumbert,* 68 NM 351; 362 P2d 507 (1961), and *Gwynn v Wilhelm,* 226 Or 606; 360 P2d 312 (1961). In *Gwynn* the Court observed that the important factor was not whether the prior case had been formally tried as distinguished from judgment taken by default, but whether the question of fact

was "actually litigated and determined" in the prior action. The "actually litigated" test is the same rule employed in *Sahn v Brisson, supra.* This Court held that even though judgment in the prior suit was by default it was actually litigated by the pleadings and introduction of competent testimony.

"A question has not been actually litigated until put in issue by the pleadings, submitted to the trier of fact for a determination and thereafter determined. (Citation omitted.)

"In the prior * * * suit, the question of whether repairs to the bulldozer were authorized by the defendant herein was put in issue by the pleadings. The trial court in that case had competent testimony before it upon which to grant a default judgment. The court, based upon the testimony and exhibits presented, determined all of the issues posed by the pleadings. Thus the issues presented by plaintiff's complaint (defendant herein) were actually litigated and we so hold." 43 Mich App 670.

In the case before us the issues were more litigated than in *Sahn.* Bendix Corporation's declaration, filed in the common pleas court, set forth the time, place and occurrence of the accident, alleged Litchalk was a Bendix employee, asserted that defendant Robert Braxton, Sr., (plaintiff in the case before us) negligently turned his vehicle in front of the Litchalk vehicle, alleged the vehicle was owned by the trust company, had been leased to Bendix, and that pursuant to the lease Bendix was responsible for repairing the vehicle. Testimony was then presented by affidavit of plaintiff's attorney to sustain each allegation and default was entered. Defendant Robert Braxton then appeared by his attorney who, on May 11, 1972, moved to set the default aside. Default was set

aside by the trial court May 19, whereupon, on May 26, counsel for Bendix moved to reinstate the default. On June 7, the trial judge wrote counsel for both parties the court was holding the default in abeyance to enable the court to read Bendix's response to defendant's motion. On June 17, the court wrote counsel that Braxton had not given good cause to set the judgment aside. No appeal was taken from the trial court's ruling. In view of the extensive attention given this matter by the trial court, the final entry of a default judgment and failure of defendant to appeal therefrom, we must accept as true the matters pleaded in the Bendix complaint and must examine the merits of the case before us. Our conclusion in this regard should not be construed as going so far as to hold that every default judgment, no matter under what circumstances it is taken, may result in collateral estoppel, but only that in the instant case the issues were sufficiently litigated to make the doctrine of collateral estoppel apply.

Our examination commences by focusing on the difference between res judicata and collateral estoppel. According to the general rules discussed in *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37, 41–42; 191 NW2d 313 (1971), and *Jones v Chambers,* 353 Mich 674, 680–681; 91 NW2d 889 (1958), the doctrine of res judicata is applicable to a second suit involving the same cause of action as that raised in the first suit, and will bar the relitigation of issues which actually were or might have been presented before the court in the first action. As noted in *Topps-Toeller, Inc v Lansing,* 47 Mich App 720, 726–727; 209 NW2d 843 (1973), *lv den,* 390 Mich 788 (1973), res judicata bars a subsequent suit between the same parties or their privies when the same cause of action is raised in a subsequent suit, and when the facts or evidence

essential to the maintenance of both actions are identical. On the other hand, collateral estoppel will bar the relitigation of issues previously decided in the first action when the parties to the second action are the same; where the second suit is a different cause of action, the bar is conclusive only as to issues actually litigated in the first suit.

In the common pleas suit, Bendix alleged that Braxton was negligent and that this negligence caused the collision between the 2 vehicles. Bendix claimed $205.76 in property damages. In the subsequent suit, Braxton has alleged that defendants were negligent, that their negligence was the proximate cause of plaintiffs' loss, and has claimed compensation for property damage and personal injury. These claims were not pleaded in the previous suit, and according to *Jones v Chambers,* 353 Mich 674, 679; 91 NW2d 889 (1958), the instant suit involves a different cause of action from that decided in the common pleas court. Therefore, this case involved the doctrine of collateral estoppel and whether or not it may be properly invoked by each of the three named defendants as a bar to plaintiffs-appellants' claim.

Robert Braxton, Sr., and Bendix Corporation were parties to the common pleas suit, and the judgment therein determined that Braxton was negligent and that his negligence was a proximate cause of the collision. Braxton has been found to be negligent and a proximate cause of the collision and would therefore be precluded from recovering from Bendix Corporation. The trial court was correct when it found that Braxton was barred from maintaining his circuit court suit against Bendix Corporation.

Neither Litchalk nor the D. L. Peterson Trust were named defendants in the common-pleas suit.

As noted in *Howell v Vito's Trucking Co, supra,* collateral estoppel only applies if the respective litigants were parties or privy to a party to the previous action. There must also be a mutuality of estoppel. 386 Mich 37, 42–43.

*Local 98 v Flamegas Detroit Corp,* 52 Mich App 297, 302; 217 NW2d 131 (1974), *lv granted,* 392 Mich 793 (1974), noted that "substantial identity" of the parties, rather than precise identity, is sufficient for application of the doctrine of collateral estoppel. Contrary to Bendix's assertion that it, as owner of the vehicle, had sued Braxton, the pleadings in the common pleas court clearly indicate that Bendix represented itself to be the lessee of the vehicle and responsible for repairs pursuant to the terms of the lease. However, MCLA 257.37(a); MSA 9.1837(a) defines the word "owner" as a person, including a corporation, which has the exclusive use of a vehicle, "under a lease or otherwise", for more than 30 days. Bendix comes within this definition, and thus it seems that its interest is "substantially identical", if not precisely identical, with that of the trust company, holder of legal title of the leased vehicle.

The trial court relied upon *Halloran v Knoph,* 243 Minn 120; 66 NW2d 551 (1954), to support its conclusion that the trust company was not party or privy to the common pleas suit. That case involved the "offensive" use of res judicata by plaintiffs who had been unable to satisfy a judgment previously rendered against a taxicab company. In the second suit, plaintiffs sought recovery from the individual person doing business as the taxicab company, and the person who drove the cab in question. On the grounds that the defendants were not named defendants in the first suit, the court referred to the "party or privy" rule and

held that plaintiffs were unable to assert res judicata as a means of establishing a right to recovery in the second suit. 243 Minn 120, 122; 66 NW2d 551, 553. That case did not involve the application of an "ownership" statute, and our Court has held that both the lessee and the lessor-legal titleholder may be owners for the purpose of establishing liability. *Mathews v Wosek,* 44 Mich App 706, 714; 205 NW2d 813 (1973).

The instant case involves the "defensive" assertion of collateral estoppel by a record title owner after the lessee owner had established its right to recover in a previous suit. The interests of both owners are "substantially identical", and we find that the D. L. Peterson Trust may assert the defense of collateral estoppel, and that the trial court erred when it held that Braxton was not barred from maintaining his suit against the trust company.

Litchalk, the employee-driver of the Bendix vehicle, was not a party to the common pleas suit. He has not acquired an interest in the subject matter of that suit through inheritance, succession, or purchase, and thus is not in privity with the parties to that suit. See 386 Mich 37, 43. *Howell, supra,* adhered to the requirement of mutuality, and said it exists if a person attempting to take advantage of the earlier judgment would have been bound by it if it had gone against him. 386 Mich 37, 43. Stated in another way, mutuality of estoppel is present if both litigants in the second suit are bound by the judgment rendered in the first suit, "and that otherwise it binds neither". Thus, Litchalk could not rely upon the previous judgment unless Braxton could have pleaded it against him had the judgment gone the other way. *Comment Note.—Mutuality of Estoppel as Prere-*

*quisite of Availability of Doctrine of Collateral Estoppel to a Stranger to the Judgment,* 31 ALR3d 1044, § 3(a), p 1060. It has been further noted that "for all practical purposes * * * " the "mutuality requirement" is " * * * coextensive with the requirement of identity of parties or privity". 31 ALR3d 1044, §§ 2(a) and 3(a), pp 1051, 1060. Consequently, the plea of collateral estoppel would not seem to be available to Litchalk, since he was neither a party nor in privity with the parties to the common pleas suit.

However, there is a well-recognized exception to the mutuality requirement. This exception applies in cases involving a relationship such as a principal and agent, master and servant, or indemnitor and indemnitee. *Bigelow v Old Dominion Copper Mining & Smelting Co,* 225 US 111, 128; 32 S Ct 641, 642; 56 L Ed 1009 (1912). See also *DePolo v Greig,* 338 Mich 703, 709–711; 62 NW2d 441 (1954), and *Schimmer v Wolverine Insurance Co,* 54 Mich App 291; 220 NW2d 772 (1974). Without citing any authorities, plaintiffs assert that this exception should not apply to this case, and that it only applies where defendants are so named in successive suits brought by the same plaintiff.

*Howell, supra,* noted that the exceptions to the mutuality rule are generally confined to the defensive pleading of collateral estoppel. 386 Mich 37, 46, footnote 7. Litchalk is asserting collateral estoppel in a defensive manner. *Mackris v Murray,* 397 F2d 74, 77 (CA 6, 1968), in the course of disallowing one to offensively plead collateral estoppel, noted that it may be pled defensively in situations involving an exception to the general rule requiring mutuality.

Generally, courts follow the rule that:

"The liability in actions growing out of an accident is

claimed because of the alleged negligence of a servant or agent, a judgment in favor of either the master or principal on the one hand, or the servant or agent on the other, sued alone, is *res judicata,* or conclusive, as to such issue of negligence in a subsequent action against the other, a derivative responsibility being present." 23 ALR2d 710, § 16, p 731.

It has also been noted that generally, the presence of derivative responsibility will apply to bar the relitigation of the issues of negligence and contributory negligence in a subsequent suit "regardless of the sequence of the suits". 23 ALR2d 710, § 7, p 719. However, the annotator pointed out that this rule is often not followed. 23 ALR2d 710, § 9, p 722.

Relying upon the general rule discussed in 31 ALR3d 1044–1099, the Iowa Supreme Court in *Goolsby v Derby,* 189 NW2d 909 (Iowa, 1971), chose to follow the rule discussed above. In the first suit, Goolsby, passenger in a vehicle driven by Swan, filed an action against the administrator of the estate of Derby, the owner and operator of the other vehicle involved in the accident. As an affirmative defense, Derby alleged that Goolsby was contributorily negligent, and also alleged that Swan was negligent and that this negligence was the sole proximate cause of the accident. 189 NW2d 909, 910–911. A jury returned a verdict for Goolsby in the first suit.

The Court considered Derby's counterclaim against Goolsby, Swan and Staats, Swan's employer, to be a second suit. Staats, the employer, asserted that the jury's decision in favor of Goolsby barred Derby from maintaining the instant suit. 189 NW2d 909, 911. The trial court agreed, and the Supreme Court affirmed that determination. 189 NW2d 909, 912, 917. Referring to

31 ALR3d 1044, § 2(a), p 1052, the Court noted two factors which should be considered in the course of deciding whether or not to apply collateral estoppel where there is no mutuality. First, it must be determined whether or not the party seeking to assert that claim is doing so offensively or defensively. Litchalk is asserting it defensively. Second, the court must determine whether or not the one against whom collateral estoppel is asserted had an opportunity to litigate the issue in the previous suit. 189 NW2d 909, 916. We have seen earlier that although Braxton defaulted, and a judgment was entered pursuant thereto, this judgment was just as conclusive and binding as to whatever was essential to support the judgment in favor of Bendix as if it had been rendered following an answer and trial. Thus, the two criteria would seem to be met.

*Goolsby* noted the general reluctance of courts to allow the master-servant exception to the mutuality requirement to be used in an offensive manner, but are more willing to allow it to be asserted defensively. 189 NW2d 909, 916. The principal-master-employer, while not a party to the first suit, was able to use collateral estoppel defensively in the second suit, and was able to rely upon the jury's finding in the first suit that the agent-servant-employee was not negligent. In the instant case, Litchalk is the servant-agent-employee who was not a party to the first suit in which the principal-employer prevailed on the grounds that Braxton was negligent and that his negligence was a proximate cause of the accident. Applying the rule set forth in *Bigelow, supra,* 23 ALR2d 710, § 16, p 731 and *Goolsby, supra,* we find that the trial court was correct in holding that Braxton may not maintain his action against Litchalk.

Further support for the above conclusions can be found in the application of the factors discussed in 31 ALR3d 1044, § 2(a), p 1052. Litchalk is using the doctrine defensively, Braxton had an opportunity to litigate the question of negligence and proximate cause, and allowing Litchalk to use collateral estoppel will be consistent with finding that the owners of the vehicle were not responsible in view of the "derivative responsibility" rule discussed above. We find that it is not generally unfair for Litchalk, driver of the Bendix vehicle, to use the result of the common pleas suit in the subsequent suit.

Affirmed as to Bendix and to Litchalk, reversed as to the D. L. Peterson Trust. Costs assessed against plaintiffs-appellants.

J. H. GILLIS, P. J., concurred.

ELLIOTT, J. *(concurring)*. Judge ALLEN has followed a prior decision of this Court. I reluctantly concur, but I hope the Supreme Court will reverse us.

Probably, Mr. Braxton or his insurance company could not see the profit in paying a lawyer more than $205.76 to defend against that small claim. The default judgment, we hold, "actually litigates" and conclusively determines that the collision was caused by his negligence, so he cannot sue for his personal injuries.

It's not right.