*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

VHS HARPER-HUTZEL HOSPITAL INC, doing business as DETROIT MEDICAL CENTER,

Plaintiff-Appellant,

v

MICHIGAN ASSIGNED CLAIMS PLAN,

Defendant,

and

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
May 23, 2019

No. 340923
Wayne Circuit Court
LC No. 16-003010-NF

LUCIA ZAMORANO MD, PLC,

Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellee.

No. 340969
Wayne Circuit Court
LC No. 16-000391-NF

SUMMIT PHYSICIANS GROUP and SUMMIT MEDICAL GROUP,

Plaintiffs-Appellants,

v

No. 341385

-1-

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

            Defendant-Appellee.

Wayne Circuit Court
LC No.   15-016965-NF

---

LANELL OLIVER,

            Plaintiff,

and

OAKWOOD HEALTHCARE INC, THE PAIN
CENTER PLLC, and INTERVENTIONAL PAIN
CENTER PLLC,

            Intervening Plaintiffs,

and

OAKLAND MRI,

            Intervening Plaintiff/Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

            Defendant-Appellee.

No.   341408
Wayne Circuit Court
LC No.   16-008468-NF

---

Before:  MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

In these consolidated appeals healthcare providers challenge the circuit court's decision denying their motions to amend their complaints to comply with *Covenant Med Ctr, Inc, v State Farm Mut Auto Ins Co*, 500 Mich 191, 218; 895 NW2d 490 (2017).  The ruling in *Covenant* determined that the plaintiffs herein had no independent right to sue for personal injury protection (PIP) benefits.  In Docket No. 340923, VHS Harper-Hutzel Hospital Inc., doing business as Detroit Medical Center (DMC), appeals by right the circuit court's October 18, 2017 Order Denying VHS Harper-Hutzel Hospital's Motion to File First Amended Complaint.  In Docket No. 340969, Lucia Zamorano MD PLC (Zamorano), and Docket No. 341385, Summit Physicians Group PLLC (Summit), appeal by right the circuit court's October 17, 2017 Order Denying Provider's Motions for Leave to File Amended Complaint.  In Docket No. 341408,

Oakland MRI (Oakland) appeals by right the circuit court's November 11, 2017 Order Denying Oakland MRI's Motion for Leave to File Amended Complaint. We affirm in all four cases.

## I. BACKGROUND

The facts are undisputed. On March 7, 2015, pedestrian Lanell Oliver (the decedent) was struck by a Dodge Dakota truck while walking across the street at the crosswalk. The decedent did not have no-fault insurance. The driver of the Dodge Dakota, Carolyn Cook-Richards, was insured with a no-fault policy through defendant State Farm Mutual Automobile Insurance Company (State Farm). The decedent submitted a claim to State Farm for medical expenses and lost wages that was denied. On July 6, 2016, the decedent filed a breach of contract complaint for PIP benefits against State Farm under the No-Fault Act, MCL 500.3101 *et seq*. The healthcare providers also submitted their bills for services and treatment to State Farm for direct payment. The healthcare providers individually filed suit against State Farm when payment was not forthcoming. On September 3, 2016, the decedent died.

On January 9, 2017, State Farm filed a Motion to Dismiss Pursuant to MCR 2.202 wherein State Farm argued that the decedent's claims had to be dismissed because the decedent died on September 3, 2016, and as of the date of the motion, there was no substitution of a representative or other party to continue the decedent's claims. On February 28, 2017, the court granted partial summary disposition to State Farm ordering that only the decedent's claims be dismissed without prejudice pursuant to MCR 2.202. The healthcare providers' claims were allowed to continue.

On May 25, 2017, our Supreme Court decided *Covenant, supra,* which held that "[a] healthcare provider possesses no statutory cause of action under the no-fault act against a no-fault insurer for recovery of PIP benefits." The Court determined that, while MCL 500.3112 "undoubtedly allows no-fault insurers to directly pay healthcare providers for the benefit of an injured person, its terms do not grant healthcare providers a statutory cause of action against insurers to recover the costs of providing products, services, and accommodations to an injured person." *Id.* at 195–196. The Court footnoted that its decision was "not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id.* at 217 n 40.

On July 28, 2017, an order was issued consolidating the healthcare provider's cases in the trial court. On August 16, 2017, a personal representative was appointed to the decedent's estate. Accordingly, the healthcare providers obtained assignments of benefits from the personal representative of decedent's estate, and then moved the trial court for leave to amend their complaints to pursue payment from State Farm as assignees. The trial court denied the motions to amend on the ground that amendment would be futile.

## II. LEAVE TO AMEND

## A. STANDARD OF REVIEW

"Decisions concerning the meaning and scope of pleading, and decisions granting or denying motions to amend pleadings, are within the sound discretion of the trial court and reversal is only appropriate when the trial court abuses that discretion." *Weymers v Khera*, 454

Mich 639, 654; 563 NW2d 647 (1997). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 442; 814 NW2d 670 (2012). Leave to amend "shall be freely given when justice so requires." MCR 2.118(A)(2). A motion to amend a complaint "should be denied only for particularized reasons, such as undue delay, bad faith, or dilatory motive on the part of the movant, a repeated failure to cure deficiencies in the pleadings, undue prejudice to the opposing party by virtue of allowing the amendment, or futility of amendment." *Boylan v Fifty Eight, LLC*, 289 Mich App 709, 728; 808 NW2d 277 (2010). "The trial court must specify its reasons for denying leave to amend, and the failure to do so requires reversal unless the amendment would be futile." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006), lv den 477 Mich 868 (2006), recon den 477 Mich 1035 (2007).

"[Q]uestions involving the proper interpretation of a contract or the legal effect of a contractual clause are ... reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Questions of statutory interpretation are also reviewed de novo. *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011).

B. ANALYSIS

1. THE ANTI-ASSIGNMENT CLAUSE

The healthcare providers first argue that the trial court erred in finding that State Farm's anti-assignment clause barred the estate's assignment of rights. We agree.

Insurance policies are contracts and are thus "subject to the same contract construction principles that apply to any other species of contract." *Rory*, 473 Mich at 461. "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Id*. "[T]he judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties...." *Id*. Absent ambiguity, contractual provisions are "to be enforced as written unless the provision would violate law or public policy." *Id*. at 468-469. Determining whether a contract provision violates "Michigan's public policy is not merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law." *Id*. at 470-471 (quotation marks and citation omitted). "In ascertaining the parameters of our public policy, we must look to policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law." *Id*. at 471 (quotation marks and citation omitted).

An assignment is defined as "[t]he transfer of rights or property." Black's Law Dictionary (7th ed), p 115. "An assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed." *First of Am Bank v Thompson*, 217 Mich App 581, 587; 552 NW2d 516 (1996). "Under general contract law, rights can be assigned unless the assignment is clearly restricted." *Burkhardt v Bailey*, 260 Mich App 636, 652; 680 NW2d 453 (2004). Further, Michigan law will enforce unambiguous contractual provisions against assignments. See *Employers Mut Liab Ins Co v Mich Mut Auto Ins Co*, 101 Mich App 697, 702;

-4-

300 NW2d 682 (1980) (finding that an anti-assignment provision was enforceable to void coverage under the policy). State Farm argues that the anti-assignment clause in its insurance policy prohibited the assignment from the personal representative to the healthcare providers. The insurance policy states, ''No assignment of benefits or other transfer of rights is binding upon *us* [State Farm] unless approved by *us*." This language clearly prohibits the assigning of benefits or the transfer of rights to anyone without State Farm's approval. It is uncontroverted that State Farm did not approve the assignments from the personal representative to the healthcare providers.

The healthcare providers contend that the anti-assignment clause did not apply to the decedent because he was not a "named insured" under the policy, the decedent's benefits derived from statute and not contract, and the clause violates public policy. The policy defines "named insured" as the first person named on the Declarations Page and his or her *spouse*. The policy further states,

> *Insured* for Personal Injury Protection Coverage means:
>
> 1. *you* or any *resident relative*; and
>
> 2. any other *person* while *occupying* or injured as a *pedestrian* by:
>
>> a. *your car* . . .

Under the policy, "pedestrian" is defined as "a *person* who is not *occupying* a motor vehicle." According to the plain language of the policy, the decedent, as a pedestrian, was an insured under the policy and therefore subject to the anti-assignment clause. In this case, however the decedent's benefits derive from both statute, MCL 500.3115(1)(a)[1], and contract. Given that the language of the policy is clear and that the contract applies to this decedent, the clause must be enforced against the healthcare providers, who as assignees stand in the decedent's position, unless the clause would violate the law or public policy, which it does. *Rory*, 473 Mich at 468-469.

In *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 200; 920 NW2d 148 (2018), the Court held that an anti-assignment clause that sought to prohibit the assignment of an accrued cause of action after the loss occurred was unenforceable as a violation

---

[1] MCL 500.3115(1)(a):

> (1) Except as provided in subsection (1) of section 3114,1 a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) Insurers of owners or registrants of motor vehicles involved in the accident.
>
> (b) Insurers of operators of motor vehicles involved in the accident.

of public policy. In this case, there is no dispute that the estate's assignments to the healthcare providers occurred after the loss and accrual of the claim. The decedent was injured on March 7, 2015. The healthcare providers rendered medical services for which they sought payment before the decedent's death on September 3, 2016. The first assignment was not issued until August 22, 2017, to healthcare provider DMC. The assignment was otherwise valid in so far that it sought only to assign past and present benefits and not those in the future, in accord with MCL 500.3143.[2] Applying *Shah*'s holding here, the trial court erred in finding that the insurance policy's anti-assignment clause was enforceable against the healthcare providers. The clause violated Michigan's public policy by preventing the post-loss assignment of an accrued cause of action.

The Court's holding was grounded in the following holding from our Supreme Court in *Roger Williams Ins Co v Carrington*, 43 Mich 252; 5 NW 303 (1880):

> The assignment having been made after the loss, did not require consent of the company. The provision of the policy forfeiting it for an assignment without the company's consent is invalid, so far as it applies to the transfer of an accrued cause of action. It is the absolute right of every person—*secured in this State by statute*—to assign such claims, and such a right cannot be thus prevented. It cannot concern the debtor, and it is against public policy. [*Id*. at 254 (emphasis added)].

State Farm challenges the Court's decision in *Shah* on the basis that the Court wrongly analyzed *Roger Williams*. State Farm additionally argues that the holding in *Roger Williams* is inapplicable because *Roger Williams* involved an absolute assignment and the healthcare providers have partial assignments, that under *Roger Williams* there was no continuing obligations by an insured party, and that the assignments would expand State Farm's liability with the request for no-fault attorney fees. This Court is bound to follow the decisions of our Supreme Court "except where those decisions have *clearly* been overruled or superseded." *Assoc Builders & Contractors v City of Lansing*, 499 Mich 177, 191-192; 880 NW2d 765 (2016). State Farm has not demonstrated that some 183 years later, *Roger Williams* has been clearly overruled or superseded. Further, these arguments are necessarily new on appeal as they are in response to the *Shah* decision that was not decided until after the trial court's dismissal of the healthcare providers' claims and their claims of appeal. State Farm's additional arguments to defeat *Roger Williams*' application are moot given our final disposition of this case.

State Farm's contention that the assignments seek to expand its liability by seeking no-fault attorney fees is disingenuous where State Farm was exposed to the same liability pre-*Covenant* when the healthcare providers had a direct statutory cause of action as it is post-*Covenant* where insureds are permitted to assign their benefits to medical providers. We further find this issue waived where it could have been, but was not raised below. See *Walters v Nadell*,

---

[2] "An agreement for assignment of a right to benefits payable in the future is void." MCL 500.3143.

481 Mich 377, 38; 751 NW2d 431 (2008) (citation omitted) (''Michigan generally follows the 'raise or waive' rule of appellate review.'').

## 2. RELATION BACK

The healthcare providers next argue that the trial court erroneously found that their amendments were in fact supplemental pleadings that did not relate back to the date of the original complaint. We disagree. The rule concerning the relation back of amended pleadings is in MCR 2.118(D), and provides, in pertinent part, that

> an amendment that adds a claim or defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading.

There is no relation back for supplemental pleadings. *Grist v Upjohn Co*, 1 Mich App 72, 84; 134 NW2d 358 (1965).

> MCR 2.118(E) governs supplemental pleadings and provides, in pertinent part, that

> [o]n motion of a party the court may, on reasonable notice and on just terms, permit the party to serve a supplemental pleading to state transactions or events that have happened since the date of the pleading sought to be supplemented, whether or not the original pleading is defective in its statement of a claim for relief or a defense.

Further, the "relation-back doctrine does not apply to the addition of new parties." *Miller v Chapman Contracting*, 477 Mich 102, 106; 730 NW2d 462 (2007) (quotation marks and citation omitted).

The healthcare providers' motions to amend were supplemental pleadings. The healthcare providers did not intend for the pleadings to add a new claim or defense, but rather to assert an alternative theory of standing to pursue their actions for payment against State Farm. As such, in filing the pleadings, the healthcare providers sought to state an event, i.e. the assignment, which had happened since the date of the original pleading. Further, the healthcare providers sought to file the pleading as a different party. The healthcare providers brought their original actions on their own behalf. After the filing, *Covenant* held that they could not sue State Farm directly. The assignments substituted the healthcare providers in the decedent's place. The healthcare providers were no longer pursuing the claim on their own behalf, but as assignees—a different party. The pleading in this case would not relate back because it was a supplemental pleading and added a new party.

## 3. THE ONE-YEAR-BACK RULE

Even had there been no determination that the healthcare providers sought to file a supplemental pleading, their amendments were barred by the one-year-back rule. The one-year-back rule in MCL 500.3145(1) provides, in pertinent part, that ''the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action

was commenced.'' The rule ''is designed to limit the amount of benefits recoverable under the no-fault act to those losses occurring no more than one year before an action is brought.'' *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 203; 815 NW2d 412 (2012). Further, the one-year-back rule is not subject to tolling. *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 593; 702 NW2d 539 (2005).

"[A]n assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed." *Professional Rehab Assocs v State Farm Mut Auto Ins Co*, 228 Mich App 167, 177; 577 NW2d 909 (1998). According to *Shah*, the date of the assignment is the controlling date for purposes of applying the one-year-back rule. 324 Mich App at 205 ("Through the assignment, plaintiffs only obtained the rights Hensley actually held at the time of the execution of the assignment . . ."). In the case of each healthcare provider, the last date of treatment was more than one year before the date of the assignment. As assignees, the healthcare providers were "entitled to recover only and just as . . . [the] assignor, might had no assignment been made." *Ward v Alpine Tp*, 204 Mich 619, 631; 171 NW 446 (1919). Thus, even had the decedent filed a direct cause of action, for example on September 28, 2017, he would not be entitled to recover any benefits for treatment he received from Summit before September 28, 2016. The same conclusion is reached for each healthcare provider. To quote our Supreme Court in *Jones v Chambers*, 353 Mich 674, 681-682; 91 NW2d 889 (1958):

> The assignment created nothing. It simply passed to plaintiffs' insurer rights already in existence, if any. If plaintiffs' insured had no rights, then plaintiffs' insurer acquired none by virtue of the assignment. To rule otherwise would be to give such an assignment some strange alchemistic power to transform a dross and worthless cause of action into the pure gold from which a judgment might be wrought. [Quotation marks omitted.]

The trial court's conclusion that it would have been futile to grant the healthcare providers' motions to amend was not an abuse of discretion. The proposed pleadings were legally insufficient to state a viable cause of action.

### 4. EQUITY

Zamorano and Summit additionally raise equity arguments that were not preserved below. This Court need not review issues raised for the first time on appeal. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 710 (2005). "[T]his Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (citations omitted). Zamorano and Summit fail to argue any of these considerations apply; therefore, we decline review.

Affirmed.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan