# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

CHILDERS v PROGRESSIVE MARATHON INSURANCE COMPANY

Docket Nos. 164953 and 164954. Argued on application for leave to appeal on March 13, 2024. Decided June 7, 2024.

Susan Childers brought an action against Progressive Marathon Insurance Company in the Genesee Circuit Court as conservator for her son, Justin Childers, who had been injured in an automobile collision on August 6, 2011, that rendered him quadriplegic. Justin had initially received no-fault personal protection insurance (PIP) benefits from plaintiff's insurer, American Fellowship Mutual Insurance Company, which was the first-priority insurer, but that insurer was declared insolvent on June 12, 2013. The Michigan Property and Casualty Guaranty Association (the MPCGA) assumed liability for payment of PIP benefits after American Fellowship was declared insolvent. After an investigation, the MPCGA concluded that Progressive was next in statutory priority after American Fellowship to provide Justin's PIP benefits. Progressive first received notice of Justin's injuries when it was informed of his claim on September 24, 2013, and Progressive denied Justin's claim in October 2013.

Plaintiff filed this action against Progressive for Justin's PIP benefits, and the court, Brian S. Pickell, J., later granted the MPCGA's motion to intervene as a plaintiff in the action; the MPCGA agreed that Progressive was primarily liable for the payment of no-fault benefits, and it sought reimbursement under the Property and Casualty Guaranty Association Act (the guaranty act), MCL 500.7901 *et seq.*, for the amount of PIP benefits it had already paid on Justin's behalf. Progressive responded that the complaints were untimely filed and that Progressive was not in the line of priority insurers. On cross-motions for summary disposition, the trial court denied relief to plaintiff and the MPCGA and granted summary disposition to Progressive. The court concluded that, while neither action was time-barred by MCL 500.3145(1), Progressive was not within statutory priority for Justin's benefits.

Plaintiff and the MPCGA appealed, and Progressive cross-appealed. In a published opinion, the Court of Appeals, CAVANAGH, P.J., and GARRETT and YATES, JJ., reversed the trial court's order and remanded for entry of orders granting summary disposition in favor of plaintiff and the MPCGA. 343 Mich App 257 (2022). The Court of Appeals concluded that, given the structure and purpose of the MPCGA, the one-year limitations period in MCL 500.3145(1) did not govern because the MPCGA is not generally subject to the no-fault act, MCL 500.3101 *et seq.*, and the MPCGA did not bring the action under no-fault act. Instead, the Court of Appeals

reasoned, the MPCGA's right to proceed against Progressive came from the guaranty act, which allows the MPCGA to claim reimbursement from another insurer in the chain of designated priority insurers. Because the guaranty act applied and because that act does not include a provision governing accrual of actions brought under that act or a statute of limitations for such actions, the Court reasoned that the default six-year limitations period of MCL 600.5813 applied. Thus, the MPCGA had six years from the date American Fellowship was declared insolvent to bring this action, and the MPCGA's action was therefore timely. The Court of Appeals alternatively held that, even if the MCL 500.3145(1) one-year limitations period applied, the period would run from the date of American Fellowship's insolvency, making the MPCGA's action timely regardless of whether the correct limitations period was one year or six years. The Court of Appeals also held that, to the extent plaintiff's action was independent from the MPCGA's action, it was similarly not subject to the MCL 500.3145(1) limitations period because that claim also arose under the guaranty act. Progressive sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant the application for leave to appeal or take other action. 511 Mich 966 (2023).

In a unanimous opinion by Justice CAVANAGH, the Supreme Court, in lieu of granting leave to appeal, *held*:

The one-year limitations period in MCL 500.3145(1) applies where either an insured or the MPCGA brings an action for PIP benefits against a lower priority no-fault insurer after the higher priority insurer becomes insolvent. Plaintiff's action against Progressive was barred by the limitations period because plaintiff did not file the action within a year of the accident or give written notice of injury to Progressive during that period, and Justin did not previously receive PIP benefits from the insurer. In the MPCGA's action, recovery was limited to the underlying claimant's—i.e., Justin's—right to recover PIP benefits; accordingly, the MPCGA's action was similarly time-barred. The trial court therefore erred by granting summary disposition in favor of plaintiff and the MPCGA. Part II(A)(2) of the Court of Appeals opinion was reversed, the remainder of that opinion was vacated, and the case was remanded to the trial court for further proceedings.

1. The MPCGA is an association of insurers (other than life and disability insurers) licensed to do business in Michigan that was established under the guaranty act. Under certain circumstances, the MPCGA is required by statute to pay insurance benefits owed to an insured if their insurer becomes insolvent. Relevant here, the MPCGA has a statutory duty under MCL 500.7931(1) and MCL 500.7925 to pay obligations of insolvent insurers that come within the act's definition of "covered claims," which are obligations of an insolvent insurer that meet specific statutory conditions. However, the MPCGA is not obligated to pay benefits for all covered claims. Instead, MCL 500.7931(3) of the guaranty act (the credit provision) grants the MPCGA the right to receive a credit toward payment on covered claims if damages or benefits are recoverable by a claimant from another insurance policy, including a no-fault insurance policy; the claimant must first exhaust all coverage provided by any policy before obtaining benefits from the MPCGA. In addition, under MCL 500.7935(2) (the assignment provision), the MPCGA may also recoup benefits it already paid a claimant through a statutory assignment of any other rights the insured or claimant may have against another person for payment of the covered claim paid by the association.

2. At the time of both Justin's accident and the filing of the case in 2013, MCL 500.3145(1) provided that a person filing a claim for PIP benefits must do so within one year of the accident unless the insured gives written notice of injury or previously received PIP benefits from the insurer. MCL 500.3145(1) applies to an action to recover PIP benefits, and there is no stated exception for such actions brought against an insurer after a higher priority insurer becomes insolvent. Although the credit provision of the guaranty act imposes on a plaintiff the duty to exhaust all coverage provided by any policy, the *nature* of the action remains an action to recover PIP benefits under the no-fault act. Stated differently, the credit provision of the guaranty act only requires a claimant to pursue coverage that is "provided by" another policy—it does not *expand* a claimant's right to recover on that policy or otherwise provide an independent cause of action against an insurer. Thus, the one-year limitations period in MCL 500.3145(1) for commencing an action for PIP benefits under the no-fault act applies to an insured's action for PIP benefits against a lower priority insurer after a higher priority insurer becomes insolvent.

3. The MPCGA's rights arise from the guaranty act. The credit provision of the guaranty act, MCL 500.7931(1), provides that if damages or benefits are *recoverable by a claimant* under an insurance policy other than a policy of the insolvent insurer, the damages or benefits *recoverable* shall be a credit against a covered claim payable under the act. In turn, the assignment provision of the guaranty act, MCL 500.7935(2), provides that an insured or claimant entitled to the benefits of this chapter shall be considered to have assigned to the association, to the extent of any payment received from the association, their rights against the estate of the insolvent insurer, rights under the policy under which his or her claim arose, and any other rights the insured or claimant may have against another person for payment of the covered claim paid by the association. The credit and assignment provisions both limit the MPCGA's rights to whatever rights the claimant possessed. In other words, those provisions tie the MPCGA's rights to the underlying claimant's rights to recover PIP benefits, which in turn are governed by the no-fault act, including MCL 500.3145(1). Thus, the MPCGA's rights to recover against, and to receive a credit from, a lower priority insurer are subject to the MCL 500.3145(1) limitations period. There is no inconsistency between the MPCGA'a role as an insurer of last resort and requiring compliance with MCL 500.3145(1) because the sole function of the MPCGA is to be responsible for certain insurance benefits (including, but not limited to, no-fault benefits) where an insolvency would otherwise leave an insured without coverage.

4. With regard to plaintiff's action against Progressive, the Court of Appeals erred by treating plaintiff's action to recover PIP benefits as grounded only in the guaranty act such that the MCL 500.3145(1) limitations period was inapplicable. Instead, the action was subject to MCL 500.3145(1) in the same manner that the provision applies to any other action for PIP benefits. Thus, plaintiff's action against Progressive was barred by the limitations period because (1) it was undisputed that these actions were not brought against Progressive within one year of the accident, (2) Progressive did not receive notice of Justin's accident during that time, and (3) Progressive did not make any payments on Justin's PIP benefits for his injuries. With regard to the MPCGA's action to recover PIP benefits it had paid for Justin's care since American Fellowship became insolvent and to receive a credit on required payments going forward, the MPCGA was unable to maintain the action against Progressive because its rights were limited to whatever rights Justin possessed and those rights were governed by the no-fault act's one-year limitations period.

Therefore, as with plaintiff, the limitations period barred the MPCGA's action against Progressive. Accordingly, the trial court erred by granting summary disposition in favor of plaintiff and MPCGA. Part II(A)(2) of the Court of Appeals opinion was reversed, the remainder of that opinion was vacated, and the case was remanded to the trial court for further proceedings.

Reversed in part, vacated in part, and case remanded to the trial court for further proceedings.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED June 7, 2024

STATE OF MICHIGAN

SUPREME COURT

JUSTIN CHILDERS, a legally incapacitated
person, by SUSAN CHILDERS, Conservator,

      Plaintiff,

and

MICHIGAN PROPERTY & CASUALTY
GUARANTY ASSOCIATION,

      Intervening Plaintiff-Appellee,

v                              No. 164953

PROGRESSIVE MARATHON INSURANCE
COMPANY,

      Defendant-Appellant.

JUSTIN CHILDERS, a legally incapacitated
person, by SUSAN CHILDERS, Conservator,

      Plaintiff-Appellee,

and

MICHIGAN PROPERTY & CASUALTY
GUARANTY ASSOCIATION,

       Intervening Plaintiff,

v                                    No. 164954

PROGRESSIVE MARATHON INSURANCE
COMPANY,

       Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

The question in this case is whether the one-year limitations period in MCL

500.3145(1) for commencing an action for personal protection insurance (PIP) benefits

under the no-fault act, MCL 500.3101 *et seq*., applies to an action for PIP benefits against

a lower priority insurer after a higher priority insurer becomes insolvent. We hold that it

does. We reverse Part II(A)(2) of the Court of Appeals' opinion, vacate the remainder of

that opinion, and remand this case to the Genesee Circuit Court for further proceedings

consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Justin Childers (Justin) was severely injured in a motor vehicle accident on

August 6, 2011. Plaintiff, Susan Childers, is Justin's mother and his conservator.[1] Justin

received PIP benefits from his mother's insurer, American Fellowship Mutual Insurance

Company (American Fellowship), until 2013. American Fellowship was declared

insolvent on June 12, 2013, and the Michigan Property and Casualty Guaranty Association

---

[1] Although Justin is the real party in interest, we refer to his conservator as "plaintiff" for
ease of reference in this opinion.

(the MPCGA) assumed responsibility for Justin's PIP benefits. After an investigation, the MPCGA concluded that defendant, Progressive Marathon Insurance Company (Progressive), was next in statutory priority after American Fellowship to provide Justin's PIP benefits. Progressive first received notice of Justin's injuries when it was informed of his claim on September 24, 2013, and Progressive denied Justin's claim in October 2013.

On November 22, 2013, plaintiff filed an action against Progressive for Justin's PIP benefits, and the trial court later granted the MPCGA's motion to intervene in the action. Eventually, the parties filed cross-motions for summary disposition. Plaintiff and the MPCGA sought summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that Progressive was liable for Justin's PIP benefits under former MCL 500.3114(4)(b) in light of American Fellowship's insolvency. Progressive sought summary disposition under both MCR 2.116(C)(7) and MCR 2.116(C)(10). Progressive argued that both plaintiff's and the MPCGA's actions were untimely under MCL 500.3145(1) because they were filed more than one year after the accident occurred and Progressive did not receive notice of Justin's injury or pay any PIP benefits to Justin during that one-year period. Progressive also argued that, even if the actions were not time-barred by MCL 500.3145(1), it was not within statutory priority for Justin's PIP benefits.

The trial court denied plaintiff's and the MPCGA's motions for summary disposition, but it granted Progressive's motion for summary disposition. The court concluded that, while neither action is time-barred by MCL 500.3145(1), Progressive is not within statutory priority for Justin's benefits. Plaintiff and the MPCGA appealed, and the Court of Appeals reversed and remanded for entry of orders granting summary disposition in favor of plaintiff and the MPCGA. *Childers v Progressive Marathon Ins*

3

*Co*, 343 Mich App 257, 261; 997 NW2d 273 (2022). The Court of Appeals agreed with the trial court that the actions were timely filed but concluded that Progressive is within the statutory priority for Justin's PIP benefits.

Regarding the timeliness of the MPCGA's action, the Court of Appeals noted that the MPCGA is not an insurance company, but rather was created by Michigan's Property and Casualty Guaranty Association Act (the guaranty act), MCL 500.7901 *et seq*., to serve as an " 'an insurer of last resort,' which an insured of an insolvent insurer can look to for coverage 'only if there is no other insurance company to turn to for coverage.' " *Childers*, 343 Mich App at 272 (quotation marks omitted), quoting *Mathis v Auto-Owners Ins Co*, 339 Mich App 471, 477; 983 NW2d 447 (2021). The panel further noted that the MPCGA is largely exempt from the no-fault act and the Insurance Code,[2] *id*. at 273, citing MCL 500.7911(3), and that the guaranty act provides the MPCGA the right to receive a credit on claims it owes to an insured from any other benefits that are recoverable by that insured, *id*. at 272, citing MCL 500.7931(3). The Court of Appeals concluded:

> Given the structure and purpose of the MPCGA, we hold that the one-year limitations period in MCL 500.3145(1) does not govern because the MPCGA is not generally subject to the no-fault act and has not brought this action directly under the no-fault act. Instead, the MPCGA's right to proceed against Progressive flows from its authority to file a claim for reimbursement from another insurer in the chain of designated priority insurers. [*Childers*, 343 Mich App at 273.]

The Court of Appeals further held that because the guaranty act does not include a provision governing accrual of actions brought under that act or a statute of limitations for such actions, the default statute applies and the MPCGA had six years from the date

---

[2] MCL 500.1 *et seq*.

4

American Fellowship was declared insolvent to bring this action. *Id*. at 273-274, citing MCL 600.5813 (statute of limitations) and MCL 600.5827 (accrual of claim). The panel added that, even if the one-year limitations period applied, the one-year period would run from the date of insolvency because the MPCGA had no claim against a lower priority insurer until the higher priority insurer became insolvent. *Id*. at 274. Because the MPCGA filed its complaint less than a year after American Fellowship became insolvent, its action was timely regardless of whether the proper period of limitations is one year or six years. *Id*.

For similar reasons, the Court of Appeals concluded that plaintiff's action, assuming it could be viewed as independent from the MPCGA's action, is also not subject to the MCL 500.3145(1) limitations period. *Id*. at 274-275. The panel reasoned that, while MCL 500.3114(4) governed the priority of insurers responsible for Justin's PIP benefits, "plaintiff's obligation to pursue other priority insurers [when a primary insurer becomes insolvent] arises under MCL 500.7931(3) of the guaranty act." *Id*. at 275. Therefore, like the MPCGA's claim, plaintiff's action did not accrue until American Fellowship was declared insolvent and the applicable limitations period was six years, but plaintiff's action was timely even if the applicable limitations period was one year. *Id*.

Progressive sought leave to appeal in this Court, and we ordered oral argument on the application. *Childers v Progressive Marathon Ins Co*, 511 Mich 966 (2023).[3]

_____

[3] We directed the parties to address the following:

(1) at what point does a claim for recovery of [PIP] benefits payable under the no-fault act accrue when an insurer providing those benefits is declared insolvent and another insurer is identified by the [MPCGA], see generally MCL 600.5827; *Frank v Linkner*, 500 Mich 133[; 894 NW2d 574] (2017);

## II.  STANDARD OF REVIEW

"We review de novo questions of statutory of interpretation."  *Perkovic v Zurich American Ins Co*, 500 Mich 44, 49; 893 NW2d 322 (2017).  We also review de novo a trial court's decision to grant or deny summary disposition on the basis that an action is barred by MCL 500.3145(1).  *Id*.

## III.  ANALYSIS

The MPCGA "is an association of insurers (other than life and disability insurers) licensed to do business in Michigan which was established pursuant to the [guaranty act]."  *Metry, Metry, Sanom & Ashare v Mich Prop & Cas Guaranty Ass'n*, 403 Mich 117, 118-119; 267 NW2d 695 (1978); see also MCL 500.7911(1).  All applicable Michigan insurers are members of the MPCGA "as a condition of [their] authority to continue to transact insurance in this state."  MCL 500.7911(1).  "To fund the cost of the MPCGA's operations, all member insurers are levied assessments by the [MPCGA]."  *Smith v Parkland Inn/Cas Reciprocal Exch*, 279 Mich App 642, 645; 760 NW2d 554 (2008), citing MCL 500.7941(1).

---

*Titan Ins Co v North Pointe Ins Co*, 270 Mich App 339[; 715 NW2d 324] (2006); (2) what statute-of-limitations period would apply to such a claim, see MCL 500.3145(1); MCL 600.5813; and (3) whether the appellant is an insurer in the chain of priority insurers, see former MCL 500.3114(4), as amended by 2002 PA 38; *Dobbelaere v Auto-Owners Ins Co*, 275 Mich App 527[; 740 NW2d 503] (2007); *Amerisure Ins Co v Coleman*, 274 Mich App 432[; 733 NW2d 93] (2007).  [*Childers*, 511 Mich at 966-967.]

Given our conclusion that MCL 500.3145(1) precludes both actions, it is unnecessary to address the third issue, i.e., the Court of Appeals' holding that Progressive was within the statutory order of priority for Justin's PIP benefits under former MCL 500.3114(4).  *Childers*, 343 Mich App at 275-283.  Instead, we vacate that part of the Court of Appeals' opinion.

Under certain circumstances, the MPCGA is statutorily responsible for paying insurance benefits owed to an insured if their insurer becomes insolvent. See MCL 500.7931(1); MCL 500.7925.[4] More specifically, "[t]he association has the statutory duty to pay obligations of insolvent insurers which come within the act's definition of 'covered claims.' " *Metry*, 403 Mich at 119. "Covered claims" are "obligations of an insolvent insurer" that meet specific statutory conditions. See MCL 500.7925. The MPCGA's obligations are not limited to no-fault insurance benefits, but rather include "all kinds of insurance except life and disability insurance." MCL 500.7925(1)(e); see also *Mathis*, 339 Mich App at 476 (addressing "covered claims" for workers' compensation benefits). There is no dispute that this case involves "covered claims" that trigger the MPCGA's initial obligation to pay Justin's PIP benefits that American Fellowship previously provided.

However, "the MPCGA is not obligated to pay benefits for all 'covered claims.' " *Mathis*, 339 Mich App at 476. Rather, the MPCGA has the right to receive a credit toward payment on covered claims "[i]f damages or benefits are recoverable by a claimant" from another "insurance policy," including a no-fault insurance policy. MCL 500.7931(3) (the "credit provision").[5] Relatedly, the claimant is required to "first exhaust all coverage provided by any policy" before obtaining benefits from the MPCGA. *Id*. In addition to receiving a credit on future payments, the MPCGA may also recoup benefits it already paid

---

[4] At times, the guaranty act refers to both an "insured" and/or a "claimant," including in the provisions relevant to this case. See, e.g., MCL 500.7925(3); MCL 500.7931(3); MCL 500.7935(2). The act does not define either term. Neither party argues that there is a meaningful distinction between those terms that is relevant to the issue in this case. Accordingly, this opinion uses the terms "insured" and "claimant" interchangeably.

[5] The credit provision does not allow the MPCGA to receive a credit from "any disability or life insurance policy owned or paid for by the claimant[.]" MCL 500.7931(3).

a claimant through a statutory "assign[ment]" of "any other rights the insured or claimant may have against another person for payment of the covered claim paid by the association." MCL 500.7935(2) (the "assignment provision").

In this case, the MPCGA became responsible for Justin's PIP benefits after American Fellowship became insolvent. In keeping with the duty to "first exhaust all coverage provided by any policy," MCL 500.7931(3), plaintiff filed this action against Progressive, arguing that Progressive was now liable for Justin's PIP benefits. The MPCGA intervened, seeking to recoup from Progressive the PIP benefits it had already paid to Justin and to receive a credit on its required payments moving forward. The Court of Appeals held that the one-year limitations period in MCL 500.3145(1) did not apply and that the actions accrued when American Fellowship became insolvent, with the default six-year limitations period, MCL 600.5813, running from that date. We disagree and hold that MCL 500.3145(1) applies to both actions.

## A. PLAINTIFF'S ACTION

We begin with plaintiff's action to recover PIP benefits from Progressive. At the time of both the accident in 2011 and the filing of this case in 2013,[6] MCL 500.3145(1) provided:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously

---

[6] The Legislature recently amended MCL 500.3145 as part of the larger statutory overhaul of Michigan's no-fault scheme. See 2019 PA 21 and 2019 PA 22, effective June 11, 2019. However, the statutory language relevant to our holding in this case did not change.

made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.

Under the first sentence, "a person filing a claim for PIP benefits must do so within a year of the accident unless the insured gives written notice of injury or previously received PIP benefits from the insurer." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 208; 815 NW2d 412 (2012). MCL 500.3145(1) applies to "[a]n action for recovery of" PIP benefits, with no stated exception for such actions brought against an insurer after a higher priority insurer becomes insolvent. Thus, plaintiff's action seeking to recover PIP benefits from Progressive is subject to MCL 500.3145(1) in the same manner that provision applies to any other action for PIP benefits.

In reaching a different conclusion, the Court of Appeals reasoned that "plaintiff's obligation to pursue other priority insurers arises under MCL 500.7931(3) of the guaranty act," and, from that observation, seemingly assumed that plaintiff's action was governed exclusively by the guaranty act such that MCL 500.3145(1) was inapplicable. *Childers*, 343 Mich App at 275. However, that the guaranty act imposes on plaintiff the duty to "exhaust all coverage provided by any policy," MCL 500.7931(3), does not change the *nature* of the action as one seeking to recover PIP benefits under the no-fault act. MCL 500.7931(3) only requires a claimant to pursue coverage that is "provided by" another policy—it does not *expand* a claimant's right to recover on that policy or otherwise provide an independent cause of action against an insurer. Thus, the Court of Appeals erred by

9

treating plaintiff's action as grounded only in the guaranty act such that MCL 500.3145(1) was inapplicable.

## B. THE MPCGA'S ACTION

Whether MCL 500.3145(1) applies to the MPCGA's action requires a different analysis. As the Court of Appeals noted, the MPCGA's rights and obligations flow from the guaranty act, so we must look to that act. In relevant part, the guaranty act's credit provision provides:

> If damages or benefits are *recoverable by a claimant* . . . under an insurance policy other than a policy of the insolvent insurer, . . . the damages or benefits *recoverable* shall be a credit against a covered claim payable under this chapter. [MCL 500.7931(3) (emphasis added).]

The assignment provision provides, in full:

> An insured or claimant entitled to the benefits of this chapter shall be considered to have *assigned* to the association, to the extent of any payment received from the association, his or her rights against the estate of the insolvent insurer, rights under the policy under which his or her claim arose, and *any other rights the insured or claimant may have against another person for payment of the covered claim paid by the association*. [MCL 500.7935(2) (emphasis added).]

In both provisions, the MPCGA's rights are limited to whatever rights the claimant possessed. The credit provision makes the MPCGA's right to a credit contingent upon a specific condition—i.e., "[*i*]*f* damages or benefits are *recoverable by a claimant*"—and further provides that the MPCGA is only entitled to a credit for "the damages or benefits *recoverable* . . . ." MCL 500.7931(3) (emphasis added). Similarly, the assignment provision provides that the MPCGA is "*assigned* . . . any other rights the insured or claimant may have against another person for payment of the covered claim paid by the

10

association." MCL 500.7935(2) (emphasis added). "Assignment" has a generally understood legal meaning of granting an assignee only the same rights that the assignor possessed. See, e.g., *Jones v Chambers*, 353 Mich 674, 681-682; 91 NW2d 889 (1958); *Jawad A Shah, MC, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 204; 920 NW2d 148 (2018).

The Court of Appeals was correct that the MPCGA's rights arise from the guaranty act. However, it failed to recognize that the relevant guaranty act provisions tie the MPCGA's rights to the underlying claimant's rights to recover PIP benefits, and these rights are governed by the no-fault act, including MCL 500.3145(1). A claimant cannot "recover[]" PIP benefits from an insurer for the purposes of the credit provision if the claimant fails to comply with MCL 500.3145(1). Cf. *Devillers v Auto Club Ins Assoc*, 473 Mich 562; 702 NW2d 539 (2005) (rejecting the applicability of judicial tolling to MCL 500.3145). Indeed, MCL 500.3145(1) uses the word "recovery" to describe what kind of action is barred. And the assignment provision does not provide the MPCGA any greater right to recover than the claimant would have. While the statutes use different wording, the effect is the same: the MPCGA's rights to recover against, and to receive a credit from, a lower priority insurer are subject to MCL 500.3145(1).[7]

---

[7] It makes no difference in this case that the MPCGA seeks reimbursement from Progressive for funds that it already paid out to plaintiff because no explicit authority provides the MPCGA an independent right to *recoup* funds from Progressive. In other words, the MPCGA can only attempt to recoup already-paid funds from another insurer if that other insurer would have been required to pay the claimant. In this way, the MPCGA's ability to recoup funds from another insurer is solely a function of the assignment provision under MCL 500.7935(2). Because the MPCGA has no greater rights than what the claimant here possessed, MCL 500.3145(1) must apply to this action.

11

In rejecting the applicability of MCL 500.3145(1) to these actions, the Court of Appeals relied on the "structure and purpose of the MPCGA," noting that the MPCGA is not an insurance company subject to the Insurance Code, but rather serves as an " 'insurer of last resort' " to protect parties who would otherwise be without coverage when an insurer becomes insolvent. *Childers*, 343 Mich App at 272-273 (quotation marks omitted), quoting *Mathis*, 339 Mich App at 477; see also *Yetzke v Fausak*, 194 Mich App 414, 418; 488 NW2d 222 (1992) ("The purpose of the [MPCGA] is to protect the public against financial losses to either policyholders or claimants due to the insolvency of insurers."). The MPCGA similarly invokes the broad purpose and structure of the guaranty act in support of the argument that MCL 500.3145(1) does not apply here.

But there is no inconsistency between the MPCGA's role as an insurer of last resort and requiring compliance with MCL 500.3145(1). As discussed earlier, MCL 500.3145(1) contains no exception for an injured person seeking PIP benefits from a lower priority insurer if a higher priority insurer becomes insolvent, and this Court has rejected the applicability of any judicially created tolling to that limitations period. See *Devillers*, 473 Mich at 586. Thus, but for the MPCGA, many insureds would be entirely without PIP benefits coverage if their insurer became insolvent. The policy question is whether, absent compliance with MCL 500.3145(1), the lower priority no-fault insurer or the MPCGA should be responsible for PIP benefits previously provided by an insolvent insurer. The implicit premise of the MPCGA's position—reflected in the Court of Appeals' opinion— is that the MPCGA should be responsible only *if there is no other no-fault insurer in the statutory order of priority*. But the answer to that question is expressed by the statutory language premising the MPCGA's rights to recover on the claimant's ability to recover.

12

The Court of Appeals, plaintiff, and the MPCGA suggest it is unreasonable, and even unfair, to apply MCL 500.3145(1) to actions that arise after a higher priority insurer becomes insolvent, noting that this would often bar an action before anyone could possibly file it. We are not oblivious to the reality that MCL 500.3145(1)—which runs from the date of the accident regardless of when an insurer becomes insolvent—substantially limits the circumstances under which the MPCGA can recover from a lower priority no-fault insurer after a higher priority insurer becomes insolvent. However, the sole function of the MPCGA is to be responsible for certain insurance benefits (including, but not limited to, no-fault benefits) where an insolvency would otherwise leave an insured without coverage. Thus, the fact that, under a proper interpretation of MCL 500.3145(1), the MPCGA is responsible for a greater share of PIP beneficiaries whose primary insurers have gone insolvent is not inconsistent with the statutory scheme.[8]

Moreover, the Court of Appeals' holding that an action against a lower priority insurer for PIP benefits accrues when the higher priority insurer becomes insolvent also raises potential practical difficulties. Under such a rule, an insurer could not predict when it might become responsible for PIP benefits given that another insurer's insolvency is not

---

[8] To the extent the MPCGA and the Court of Appeals suggest that the credit and assignment provisions would be rendered nugatory if MCL 500.3145(1) applied to actions under those provisions, that is not accurate. While perhaps many actions against lower priority no-fault insurers for PIP benefits will be time-barred, it is still possible for such actions to proceed under certain circumstances. Moreover, the credit and assignment provisions also apply to a claimant's other possible sources of insurance coverage applicable to "covered claims," and MCL 500.3145(1) only applies to an action for PIP benefits. Finally, as discussed earlier, the MPCGA's obligations under the guaranty act are not limited to no-fault insurance benefits and include "all kinds of insurance except life and disability insurance." MCL 500.7925(1)(e); see also *Mathis*, 339 Mich App at 476.

necessarily a predictable event. An insurer could conceivably be required to litigate whether it is a lower priority insurer—and ultimately be held responsible for paying PIP benefits—many decades after an accident occurred.[9] This Court has recognized that MCL 500.3145(1) "serves the interest in preventing stale claims by allowing the insurer to assess its liability while the information supporting the claim is relatively fresh." *Welton v Carriers Ins Co*, 421 Mich 571, 578; 365 NW2d 170 (1984), abrogation on other grounds recognized by *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 61 n 10 (2006). Application of MLC 500.3145(1) to this case serves that interest by providing lower priority insurers with finality and long-term predictability about their obligations. Further, it ensures that suits over insurer priority are supported by relatively fresh evidence, all without endangering the PIP beneficiaries' right to recover from either the lower priority insurer (if MCL 500.3145(1) is satisfied) or the MPCGA.[10]

Finally, it is worth emphasizing that the issue in this case is *not* whether Justin will continue to receive PIP benefits at the same level he received from American Fellowship before it became insolvent. As this Court recently recognized, an injured person's right to PIP benefits is both statutory and contractual in nature, and the right to benefits at a particular level vests at the time of the injury. See generally *Andary v USAA Cas Ins Co*,

---

[9] At oral argument, Justice ZAHRA asked the MPCGA's counsel whether, under the Court of Appeals' decision, the MPCGA could bring a claim for PIP benefits against a lower priority insurer if a higher priority insurer becomes insolvent 25 years after an injury occurred, and counsel acknowledged that it could.

[10] We are not suggesting that this scheme is better policy than the scheme suggested by the Court of Appeals (that is not our role), and, of course, the Legislature is free to amend the pertinent statutes to alter who is responsible for the obligations of an insolvent insurer and under what circumstances that responsibility is triggered.

512 Mich 207; 1 NW3d 186 (2023). There has been no suggestion that American Fellowship's insolvency extinguished or otherwise diminished Justin's right to PIP benefits, and the language governing the MPCGA's responsibility for "covered claims" suggests that its responsibility is equivalent to that which the insolvent insurer possessed. See MCL 500.7925. The only issue here is *who* will be responsible for Justin's benefits—the MPCGA or Progressive? Under the circumstances presented here, the MPCGA is responsible.

## IV. CONCLUSION

We hold that MCL 500.3145(1) applies where either an insured or the MPCGA brings an action for PIP benefits against a lower priority no-fault insurer after the higher priority insurer becomes insolvent. It is undisputed that (1) these actions were not brought against Progressive within one year of the accident, (2) Progressive did not receive notice of Justin's accident during that time, and (3) Progressive has not made any payments on Justin's PIP benefits for his injuries. Accordingly, Progressive is entitled to summary disposition in both actions. We reverse Part II(A)(2) of the Court of Appeals' opinion, vacate the remainder of that opinion, and remand this case to the Genesee Circuit Court for further proceedings consistent with this opinion.

Megan K. Cavanagh
Elizabeth T. Clement
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden

15